# EXHIBIT A

# COHEN, PLACITELLA & ROTH

### LAW OFFICES

A PROFESSIONAL CORPORATION
TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 2900
PHILADELPHIA, PENNSYLVANIA 19103
(215) 567-3500    FAX (215) 567-6019    CPRLAW.COM

DREW M. RENZI
drenzi@cprlaw.com

August 8, 2024

**VIA CERTIFIED MAIL**
**9489 0090 0027 6428 2089 87**
**IUVO Bioscience-Erie, LLC f/k/a**
**MMC Medical Sterilization Services Group, Inc.**
**f/k/a Medical Manufacturing Corp.**
7500 West Henrietta Road
Rush, NY 14543

      **RE: Morton v. Cosmed Group, Inc., et al.**
      **Erie CCP No. 2024-11887**

To Whom it May Concern:

      Enclosed, please find the Complaint and Amended Complaint filed in the Erie County Court of Common Pleas pertaining to the above referenced matter in which you are named as a Defendant.

      We ask that you kindly comply with the Rules of Civil Procedure and respond to this matter accordingly, and timely. Should you have any questions, please do not hesitate to contact our office.

                Very truly yours,
                */s/ Drew M. Renzi, Esq.*
                DREW M. RENZI, ESQUIRE

DMR/atm
Enclosures



Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM. Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



## COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

MORTON, LEANNE

V

COSMED GROUP INC

NO. 2024-11887

### CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Erie County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: LEANNE MORTON, Pro Se

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**  [X] Yes  ☐ No

**MDJ Appeal**  ☐ Yes  [X] No

**Commencement of Action**:

Complaint

**Money Damages Requested** [X]

**Amount in Controversy**:

More than $50,000

## Case Type and Code

Mass Tort:

Toxic Tort - DES

## Other:

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ **ERIE** _____ **County**

| For Prothonotary Use Only: |
| --- |
| Docket No: |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

SECTION A

The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| LEANNE MORTON | COSMED GROUP, INC. |

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a Class Action Suit?** ☒ Yes  ☐ No

**Is this an MDJ Appeal?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney:  Michael Coren (PA # 31037)

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

SECTION B

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☒ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other _____

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other _____

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.    Cover Sheet**

(a)(1)   This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i)      actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii)     actions for support, Rules 1910.1 et seq.

(iii)    actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv)    actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v)     actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi)    voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)     At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)     The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)     The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)     A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)     The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet. The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**COHEN, PLACITELLA & ROTH, P.C.**
By: Michael Coren (PA # 31037)
Eric S. Pasternack (PA # 320127)
Matthew A. Capacete (PA # 330982)
Drew M. Renzi (PA # 327880)
Two Commerce Square
Suite 2900
2001 Market Street
Philadelphia PA  19103-7054
Tel. (215) 567-3500
mcoren@cprlaw.com
epasternack@cprlaw.com
mcapacete@cprlaw.com
drenzi@cprlaw.com

| | |
|---|---|
| **LEANNE MORTON**<br>3804 Mingo Avenue<br>Erie PA  16510<br><br>*And*<br><br>**TORI GIDO**<br>1044 Priestly Avenue<br>Erie PA  16511<br><br>**Individually and on behalf of all<br>others similarly situated**<br><br>*Plaintiffs*<br><br>v.<br><br>**COSMED GROUP, INC.**<br>2205 East 33rd Street<br>Erie PA 16510<br><br>*And*<br><br>**IUVO BIOSCIENCE-ERIE, LLC f/k/a<br>MMC MEDICAL STERILIZATION<br>SERVICES GROUP, INC. f/k/a<br>MEDICAL MANUFACTURING<br>CORP.**<br>7500 West Henrietta Road<br>Rush NY 14543<br><br>*And* | **COURT OF COMMON PLEAS<br>OF ERIE COUNTY**<br><br>**AUGUST TERM, 2024**<br><br>No. _____ |

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**SPICEY PARTNERS REAL ESTATE
   HOLDING, LLC**
2205 East 33rd Street
Erie PA 16510

*And*

**ERIE STERILIZATION REAL ESTATE,
   LLC**
c/o Quinn Law Firm
2222 West Grandview Boulevard
Erie PA 16506

*And*

**JOHN DOE DEFENDANTS 1-25**

*Defendants*

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyer Referral & Information Service
PO Box 1792
Erie PA 16507
(814) 459-4411**

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**COHEN, PLACITELLA & ROTH, P.C.**
By: Michael Coren (PA # 31037)
Eric S. Pasternack (PA # 320127)
Matthew A. Capacete (PA # 330982)
Drew M. Renzi (PA # 327880)
Two Commerce Square
Suite 2900
2001 Market Street
Philadelphia PA  19103-7054
Tel. (215) 567-3500
mcoren@cprlaw.com
epasternack@cprlaw.com
mcapacete@cprlaw.com
drenzi@cprlaw.com

| | |
|---|---|
| **LEANNE MORTON**<br>3804 Mingo Avenue<br>Erie PA  16510<br><br>*And*<br><br>**TORI GIDO**<br>1044 Priestly Avenue<br>Erie PA  16511<br><br>**Individually and on behalf of all<br>others similarly situated**<br><br>*Plaintiffs*<br><br>**v.**<br><br>**COSMED GROUP, INC.**<br>2205 East 33rd Street<br>Erie PA 16510<br><br>*And*<br><br>**IUVO BIOSCIENCE-ERIE, LLC f/k/a<br>MMC MEDICAL STERILIZATION<br>SERVICES GROUP, INC. f/k/a<br>MEDICAL MANUFACTURING<br>CORP.**<br>7500 West Henrietta Road<br>Rush NY 14543<br><br>*And* | **COURT OF COMMON PLEAS<br>OF ERIE COUNTY**<br><br><br>**AUGUST TERM, 2024**<br><br><br>**No.** _____ |

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**SPICEY PARTNERS REAL ESTATE
   HOLDING, LLC**
2205 East 33rd Street
Erie PA 16510

*And*

**ERIE STERILIZATION REAL ESTATE,
LLC**
c/o Quinn Law Firm
2222 West Grandview Boulevard
Erie PA 16506

*And*

**JOHN DOE DEFENDANTS 1-25**

          *Defendants*

---

## CLASS ACTION COMPLAINT
## AND JURY TRIAL DEMANDED

---

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial
System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**NATURE OF THE ACTION**

1.　　　Ethylene Oxide ("EtO"), a globally recognized human carcinogen for decades, has been silently permeating in the air of certain American communities, primarily being emitted from medical sterilization sites and chemical plants producing everyday items like antifreeze. This insidious chemical, officially deemed cancer-causing by authorities like the Environmental Protection Agency ("EPA"), National Toxicology Program, and the International Association of Research on Cancer, is alarmingly prevalent in the air in Erie Pennsylvania, where the toxin is continuously released from sterilization facilities and impacts the population, including many children. Recent investigations reveal a disturbing pattern: communities suffering the most from exposure to toxic EtO emissions in America are at or below the federal poverty line. These communities, already vulnerable, bear the brunt of the health hazards from a pollutant they have little to no role in producing and are often kept in the dark about the greatest health threat lurking in their air.

2.　　　The EPA recognizes EtO as both a hazardous substance and a hazardous material under the Clean Air Act (CAA), the Resource Conservation and Recovery Act (RCRA) and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). 40 CFR part 302.4 (Table 304.2)

3.　　　Health implications of continuous EtO exposure are dire and far-reaching, encompassing a range of cancers—including breast, blood, stomach, leukemia, lymphoma, pancreatic, and brain, as well as reproductive problems and miscarriages. For children, who are more vulnerable to the impacts of EtO, the stakes are even higher, with EtO exposure increasing the risk of severe DNA mutations. Even short-term exposure to this toxin can initiate a slew of symptoms like respiratory issues, nausea, headaches, fatigue, and neurological disorders. Plaintiffs

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

seek injury compensation as well as medical monitoring costs for being affected by EtO exposure within a five-mile radius of the Defendant Cosmed Group, Inc.'s sterilization facility at 2205 East 33rd Street, Erie, Pennsylvania (hereinafter "the Erie Facility") from the date of first EtO release and exposure to be determined through discovery. The Erie Facility is owned by the Defendant Spicey Partners Real Estate Holdings, LLC. Upon information and belief, the Erie Facility was previously owned and/or operated by the Defendants iuvo BioScience-Erie LLC (f/k/a MMC Sterilization Services, Group, Inc. and f/k/a Medical Manufacturing Corp.) and Erie Sterilization Real Estate LLC.

4.      This class action lawsuit is a direct response to the harm and suffering endured by the plaintiffs, traced back to the negligent handling of EtO at the Erie Facility. Through their reckless practices and by acting in concert, Defendants have unleashed a deadly and ever-present series of plumes of EtO across Erie, Pennsylvania for decades, poisoning the air and causing marginalized communities, once again, to suffer disproportionately from environmental contamination. Plaintiffs and other similarly situated to them consequently have been exposed to hazardous EtO at greater than normal background levels and thereby have sustained an already manifested disease caused by the exposure and/or hav been placed into a significantly increased risk of contracting a serious latent disease from the exposure.

5.      Of particular concern, and one of the fundamental reasons for the herein requested medical monitoring remedy for the Class, is the high likelihood of one or more latent diseases developing decades from now for the people—particularly children—who have been inescapably exposed to this deadly toxin daily due to Defendants' actions and omissions. Thankfully, we have the capacity with modern healthcare to regularly scan for, monitor, and track disease progression—preventing readily avoidable deaths through early detection and treatment. The ongoing EtO

Case# 2024-11887-O Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

contamination crisis in Erie, Pennsylvania necessitates this modern solution in the interests of the fair administration of justice and to meet the coequal goals of damages consistent with the common law tradition—to compensate and deter. Anything less would succumb the state of public health in these communities to this fate: many thousands of Erie residents, including children, will die avoidable deaths from diseases that could have been detected earlier and treated safely—diseases that are caused by EtO emissions resulting from the Defendants' actions.

## INTRODUCTION

6.      EtO was first listed in the National Toxicology Program, Department of Health and Human Services 's *Fourth Annual Report on Carcinogens* in 1985 as reasonably anticipated to be a human carcinogen based on limited evidence of carcinogenicity from studies in humans and sufficient evidence of carcinogenicity from studies in experimental animals. The listing was revised to *"known to be a human carcinogen"* in the *Ninth Report on Carcinogens* in 2000.[1]

7.      Notwithstanding their knowledge of this ultrahazardous toxicology, Defendants disregarded EtO's harmful properties as an environmental toxin, resulting in dangerous volumes of EtO being released into the communities surrounding the Erie Facility.

8.      For decades, Defendants has been emitting substantial quantities of EtO into the air supply of a sizeable population of the Eire Pennsylvania area. As a result, those who lived, worked, prayed, and attended school in the surrounding area of the Erie Facility unknowingly have been inhaling EtO in the air they breathe on a routine basis.

9.      Defendants never informed the residents of Erie, New Jersey or those who attend school, live, pray, or work nearby that they systematically emit EtO into the air, nor did Defendants warn these residents that they routinely and continuously breathe in a known human carcinogen.

---

[1] *National Toxicology Program, Department of Health and Human Services*, Fifteenth Edition. "EtO. "Page 1, https://ntp.niehs.nih.gov/sites/default/files/ntp/roc/content/profiles/ethyleneoxide.pdf.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10.    Through its industrial processes, Defendants emits EtO into the air, allowing it to be carried by the wind and natural air movement throughout the area surrounding the Erie Facility. As such, residents in the area have unknowingly been exposed to carcinogenic EtO for decades— some at levels 600 times the national average cancer risk.

11.    At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants since at least 1985. Notwithstanding, Defendants chose to operate their businesses in a way such that EtO supplied to the Erie Facility was emitted in a densely populated area full of children, houses, parks, schools, and businesses. On January 19, 2023, the EPA conducted a community meeting by Zoom advising persons living or working in or around the Erie facility of the potential exposure to EtO emissions. .

12.    On February 7, 2023, the Union of Concerned Scientists published an intensive report ("USC report") on the exposure of EtO to communities .

13.    The Union of Concerned Scientists found and lists the Erie Facility a being one with EPA identified elevatged cancer risks and presents the following demographic information: . The Erie Facility is  situated within five miles of nearly 129,800 people and 85 schools and childcare centers. It identifies the community around the Erie Facility as one with a high percentage people of low income.

14.    On January 29, 2024, Defendant Cosmed published a blog on its website stating the third stage of its sterilization process reduced EtO concentrations to or below permissible levels.

15.    On March 14, 2024, the EPA announced final amendments to the National Emissions Standards for Hazardous Air Pollutants for Ethyl Oxid Commercial Sterilizers and said

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the new standards will reduce the emissions from commercial sterilization facilities to the outside air by 90% and reduce the estimate cancer deaths from 8,000 in 1 million to 100 in 1 million.

16.     In June 2024, the EPA conducted a community meeting in Erie New Jersey advising the people living and working in and around the Erie Facility of the new emissions standards and the comparable health risks to which they had been exposed under old standards relative to their exposure under the new significantly lower emission standards.

## THE PARTIES

17.     Plaintiff LeAnne Morton is a natural person and a resident of the Commonwealth of Pennsylvania.

18.     Plaintiff Tori Gido is a natural person and is a resident of the Commonwealth of Pennsylvania.

19.     Defendant Cosmed Group, Inc. is a Delaware Corporation organized and existing under the laws of Delaware with a principal place of business located at 2205 East 33rd Street, Erie PA 16510. It is headquartered at 28 Narragansett Avenue, Jamestown RI 02835 and is subject to service of process via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 North Orange Street, Wilmington DE 19801.

20.     Defendant iuvo BioScience-Erie, LLC is a Pennsylvania Limited Liability Company which had a principal place of business at 2205 East 33rd Street, Erie PA 16510 at relevant times. It is subject to service of process via its headquarters address, 7500 West Henrietta Road, Rush NY 14543.

21.     MMC Medical Sterilization Services Group, Inc. f/k/a Medical Manufacturing Corp. was a Pennsylvania Corporation and was merged into iuvo BioScience-Erie, LLC in April 2015.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

22.     Defendant Spicey Partners Real Estate Holding, LLC is a Texas Limited Liability Company with a principal place of business at 2205 East 33rd Street, Erie PA 16510. It is headquartered at 28 Narragansett Avenue, Jamestown RI 02835 and is subject to service of process via its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas TX 75201.

23.     Defendant Erie Sterilization Real Estate, LLC is a Pennsylvania Limited Liability Company and is subject to service of process via its registered agent, Quinn Law Firm, 2222 West Grandview Boulevard, Erie PA 16506

24.     Defendants Cosmed Group, Inc. and iuvo BioScience-Erie, LLC, f/k/a MMC Sterilization Services Group, Inc., f/k/a Medical Manufacturing Corp. are hereinafter jointly referred to as "the Sterilization Defendants".

25.     John Doe Defendants 1-25 are unidentified persons and/or entities pled under Pa. R. C. P. 2005, whose names, despite reasonable diligence and investigation, are presently unknown and whose acts, omissions, failures and conduct may have caused and/or contributed to the subject incidents and events.

26.     At all times material hereto, the John Doe Defendants were engaged in the business of manufacturing, producing, fabricating, marketing, selling and/or distributing ethylene oxide, which present at, used and released from the Erie facility at 2205 East 33rd Street, Erie PA 16510.

27.     At all times material herein each defendant acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, each defendant is or may be liable for

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the tortious acts, omissions and activities of a co-defendant set forth herein as an alter ego of such defendant or as a constituent member or part of an enterprise as the facts may establish.

28.  The Sterilization Defendants operate the medical sterilization facilities in Erie Pennsylvania and have operated the Erie Facility since at least 1986.

29.  The Defendant Spicey Partners Real Estate Holding, LLC owns the real estate on which the Erie Facility is located. Upon information and belief, the Defendants Erie Sterilization Real Estate LLC, MMC Medical Sterilization Services Group, Inc., and Medical Manufacturing Corp. previously owned the real estate on which the Erie Facility is located. The Defendants Spicey Partners Real Estate Holding, LLC; Erie Sterilization Real Estate LLC, MMC Medical Sterilization Services Group, Inc. and Medical Manufacturing Corp. are hereinafter jointly referred to as "the Landlord Defendants".

30.  The Sterilization Defendants and the Landlord Defendants (collectively the Erie Facility Defendants" are legally responsible parties for any leaks, spills, emissions or releases of hazardous substances and materials stored, used, treated or disposed of at the Erie Facility.

31.  The John Doe Defendants manufactured, produced, fabricated, marketed, sold and/or distributed the ethylene oxide that was used, stored and released at or from the Erie Facility. Each of the John Doe Defendants are hereinafter jointly referred to as "the EtO Supply Defendants". They are responsible for defectively dangerous substances that were distributed to and released from the Erie Facility.

32.  At all times material herein each defendant acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, each defendant is or may be liable for

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the tortious acts, omissions and activities of a co-defendant set forth herein as an alter ego of such defendant or as a constituent member or part of an enterprise as the facts may establish.

## JURISDICTION AND VENUE

33.    This Court has jurisdiction over the Defendants because they either own, owned, operate and/or operated a sterilization plant in Pennsylvania at 2205 East 33rd Street, Erie PA 16510 from which a hazardous substance or hazardous material have has be released into and polluted the environment of Pennsylvania and injured the citizens and residents of Pennsylvania, or manufactured or supplied the hazardous substances substance materials that were released form said premises.

34.    Venue is proper pursuant to Pa. R. Civ. No. 302(C)(3) because Plaintiffs' claims arose in Erie County, Pennsylvania.

## COMMON FACTUAL ALLEGATIONS

35.    Plaintiffs have each resided, worked, or attended school within approximately five miles or less from the Defendants' Erie Facility for a significant amount of time while the Sterilization Defendants were emitting unsafe and hazardous levels of EtO into the air.

36.    Toxic chemicals and fumes released by Defendants was ongoing upon Plaintiffs' properties and persons throughout the duration of Plaintiffs' residence at Plaintiffs' properties.

37.    At the time of the purchase or lease of Plaintiffs' properties, and/or the time that Plaintiffs attended work or school, Plaintiffs were unaware that they were being subjected to dangerous levels of EtO, nor could Plaintiffs have known the extent of the EtO emissions coming from the Erie Facility.

38.    EtO is an odorless and colorless flammable gas at room temperature that is produced in large volumes for industrial uses.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

39.     Medical device sterilizers use EtO in their sterilization processes.

40.     The EtO sterilization process generally begins by placing medical equipment in a gas chamber. After air is pumped out of the chamber, EtO is introduced and allowed to diffuse into the medical equipment for several hours. Once the medical equipment are sterilized, the EtO is pumped out of the chamber, and the remaining EtO is supposed to be allowed to slowly dissipate.

41.     Through their industrial processes, the Erie Facility Defendants emitted or allow the emission  EtO into the air form the Erie Facility, allowing it to be carried by the wind and natural air movement throughout the area surrounding the facilities. As such, residents' properties in the area have unknowingly been exposed to carcinogenic EtO for decades.

42.     EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body.

43.     At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of cumulative EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants since at least 1985. Furthermore, in 2016, the EPA presented new data revealing that the EPA determined EtO increased the risk of cancer 60 times what was previously thought.

44.     Notwithstanding, for decades, Defendants chose to operate their respective businesses such that the EtO supply and use chain culminates in the emission of EtO in densely populated areas full of children, houses, parks, schools, and businesses, significantly increasing the risk of these Erie Pennsylvania residents contracting a serious disease.

45.     Further, although technologies to control EtO have been available and widely used since the 1980s, the Erie Facility Defendants operated the Erie Facility for years without using the best practices and control technologies available to reduce its emissions.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

46.     As sophisticated corporations and long-term users, transporters, and emitters of EtO, Defendants had superior knowledge and access to information regarding the dangers of EtO, more so than the general public or Plaintiffs.

47.     While the harmful properties of EtO are not widely known to an average person who is not involved in the business of EtO sterilization, the harmful properties of EtO have been known—or should have been known—to Defendants and anyone in the business of supplying and using EtO as part of a sterilization process, for decades. By way of example:

    a.   In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of EtO.

    b.   In 1981, NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards, including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with increases of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

    a.   In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

c.   In the early 1990s, NIOSH published the largest and most informative epidemiological study of EtO. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food products. The study found sufficient evidence to support a causal link between exposure to EtO and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

d.   In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen—the agency's highest risk classification—finding EtO to be carcinogenic to humans.

e.   In 2000, following suit, the U.S. Department of Health and Human Services reclassified EtO to "known to be a human carcinogen."

f.   The U.S. Department of Labor's Occupational Safety and Health Administration's (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[2]

---

[2] See, Occupational Safety and Health Administration (OSHA), *OSHA Fact Sheet: Ethylene Oxide*, https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf, (last accessed: February 9, 2024).

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

g.  In 2016, the EPA's Integrated Risk Information System similarly reclassified EtO as carcinogenic to humans and increased—by a multiple of 30 in adults and 60 in children—its estimate of EtO's cancer potency. [3]

h.  EtO exposure affects the most vulnerable members of the population. The EPA states that "for a single year of exposure to EtO, the cancer risk is greater for children than for adults. That is because EtO can damage DNA."

48.  Despite knowing these risks, the Erie Facility Defendants' EtO sterilization process did not comply with safe and prudent methods of EtO sterilization.

49.  At all relevant times, Defendants—by way of failure to implement control measures to limit emissions, failure to upgrade sterilization equipment, intentional shortening of EtO degassing/aeration/quarantining time, and/or other unsafe practices—subjected Plaintiffs and the Erie, Pennsylvania community to unhealthy and dangerous levels of EtO in order to increase profits and/or cut costs.[4]

50.  At all relevant times, Defendants failed to train its employees and managers, resulting in unsafe practices which created risky EtO sterilization practices with the goal of saving money.

51.  Defendants had knowledge of faulty/ineffective training systems, faulty/ineffective supervision, and employees' unfitness to perform their jobs safely.

52.  On August 22, 2018, the U.S. EPA released the 2014 National Air Toxic Assessment ("NATA")—a screening tool that estimates cancer risks based on emission data in

---

[3] Max Blau and Lylla Younes, *The Dirty Secret of America's Clean Dishes*, ProPublica (Dec. 20, 2021) https://www.propublica.org/article/the-dirty-secret-of-americas-clean-dishes, (last accessed: February 9, 2024).

[4] See EPA, Final Amendments to Air Toxics Standards for Ethylene Oxide Commercial Sterilization Facilities, https://www.epa.gov/system/files/documents/2024-03/factsheet_etosterilizers_final_3-14-24.pdf. (last accessed: August 2, 2024).

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

76,727 census tracts across the United States. The 2014 NATA revealed 109 census tracts in the United States with cancer-risk scores greater than 100 cases per one million people exposed to toxic air pollution during their lifetime, more than what the U.S. EPA considers "acceptable" limits.

53.     Exposure to EtO has been widely studied, and its negative health effects are well documented. Presently, there is evidence linking exposure to increased risk of lymphohematopoietic cancer such as non-Hodgkin's lymphoma, multiple myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rate of miscarriages and infertility.

54.     Commercial food product sterilizers use the EtO sterilization process on over 20 billion healthcare products annually in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the chamber, EtO is injected and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the EtO is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate. Each time this sterilization cycle is run, EtO is emitted—whether through controlled or uncontrolled emissions known as "fugitive emissions"—into the air and inhaled by the surrounding community.

55.     EPA regulations currently do not require fugitive emissions to be reported, so tracked emission figures do not accurately account for these fugitive emissions, which include untracked ventilation due to lack of maintenance, faulty design, and other untracked escape pathways for this highly explosive air toxin.

56.     EtO is extremely flammable and explosive in its room-temperature gaseous form—therefore, it is typically handled and shipped as a refrigerated liquid to mitigate those risks.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

57.     In fact, EtO is so explosive that it is one of the main components in thermobaric and "fuel-air explosive" weapons used by the US military, sometimes referred to as "vacuum bombs." These bombs often produce an atomic-mushroom-like smoke signature and blast characteristics that look like "mini-nukes." They are among the most powerful nonnuclear weapons in our country's arsenal. EtO is a preferred compound for such military uses because it has a shock wave effectiveness of 5:1 compared to dynamite—in other words, to duplicate the shock wave of 5 pounds of dynamite, you need just 1 pound of EtO.[5]

58.     In addition to EtO's explosive quality, it is also odorless—unless one is to inhale very concentrated amounts, which is effectively only possible in occupational exposure scenarios. Other industries that handle chemicals with these characteristics—such as the liquified petroleum gas industry—combine an additive with its products to alert users and other nearby individuals of leaks. Such measures have proven to be effective in alerting propane users to a problem - and giving them the time they need to ensure their safety. Upon information and belief, the Erie Facility Defendants may have only recently instituted safety precautions with EtO which have long been readily available.

59.     In manufacturing, distributing, and using EtO, the EtO Defendants have failed to add any odorous substances to EtO to alert employees and residents in the neighborhoods of the Erie Facility that EtO is present and endangering them.

60.     As such, local residents, students, and workers in the areas of these facilities have unknowingly been subjected to and breathed in EtO emissions for decades. All the while, the Erie Facility emitted EtO, and the Defendants knew, or should have known, that EtO would be releases

---

[5] Meyer R, Köhler, J., Homberg A. *Explosives. 6th ed*. Weinheim, Germany: Pg. 142.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

into the environment and when it was exposure to it is dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

61.     Exposure to toxic chemicals may cause latent yet substantial injury, which should be compensated, even if the full effect of the exposure is not immediately apparent.

62.     Named Plaintiffs and all putative Class Members suffered appreciable harm as a result of contact with and inhaling air poisoned with Defendants' dangerously high EtO emissions. The exposures levels to which they were subjected are greater than the background levels of EtO that generally exist.

63.     Medical monitoring and health assessments are necessary to detect the potential onset of a serious illness or disease due to physiological changes that indicate a substantial increase in risk of harm from exposure to EtO.

64.     Therefore, as a result of this harm, it is reasonably necessary for Plaintiffs to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of their EtO exposure. It is further necessary that proper epidemiological and public health evaluations be performed using the results of the medical monitoring.

65.     Monitoring procedures exist in the contemporary medical field—specific to EtO exposure—that make possible the early detection of cancer, the disease progression of cancer, and the presence of biomarker abnormalities that indicate the development of cancer.

66.     Conversely, when cancer care is delayed or inaccessible there is a lower chance of survival, greater problems associated with treatment, and higher costs of care.

67.     Therefore, preventative diagnostic tests for the early detection of signs or symptoms of latent cancers are medically necessary to assure early diagnosis and effective treatment,

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

mitigating the risk of harm of these serious diseases. In other words, early detection increases the chances of survival.

68.    It is inequitable to place the economic burden of such care on the unwittingly exposed plaintiffs/class member rather than on the liable Defendants whose conduct, as here, was negligent or in violation the Pennsylvania Hazardous Sites Cleanup Act, Act 108 of 1988.

69.    Having been harmed by regularly breathing in elevated levels of EtO, Plaintiffs and putative Class Members seek as damages the costs of such diagnostic testing and medical monitoring, in order to detect the early onset of diseases. This testing will, in turn, identify the need for treatment, management, and rehabilitation in the event cancer is detected and Plaintiffs and/or any Class Members are diagnosed. To the extent Plaintiffs and others have already suffered an injury that manifested, they seek damages for such injuries they are entitled to under the Laws of the Commonwealth of Pennsylvania.

## FACTS SPECIFIC TO PLAINTIFFS

70.    Plaintiff LeAnne Morton is a resident of 3804 Mingo Avenue, Erie, Pennsylvania and has lived at her residence less than two (2) miles from the Erie Facility since 2005. After exposure to EtO she was diagnosed with breast cancer in 2023 and underwent a mastectomy in 2024.

71.    Plaintiff Tori Gido was a resident of 1044 Priestly Avenue, Erie, Pennsylvania and has lived in her current residence less than two (2) miles from the Erie Facility since 2014. She previously lived at a residence less than one mile from the Erie Facility from 1998 to 2007 and a residence less than two (2) miles from the Erie Facility from 1996 to 1998. 1982-2007. After exposure to EtO, Ms. Gido was diagnosed with non-Hodgkins Lymphoma in 2018.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

72.     Plaintiffs reside or have resided, frequent or have frequented, work or have worked, and/or attend schools or have attended schools in census tracks exposed to EtO levels that, according to the U.S. EPA, correspond with a cancer risk significantly higher than the national average cancer risk.

73.     Named Plaintiffs, like many other Erie, Pennsylvania residents, unknowingly lived with and inhaled Defendants' carcinogenic EtO emissions for years.

74.     Until recently, Named Plaintiffs had no reason to know the specific amount of EtO that Defendants was releasing, nor how dangerous these levels of EtO emissions were—including their association with elevated cancer risks—nor, that EtO was being emitted in its communities at all.

75.     Erie, Pennsylvania was all included on a "red flag" list of 23 sites by the EPA— indicia of the far higher risk of toxic EtO exposure to Erie Pennsylvania residents than the American population at large.

76.     Furthermore, these numbers do not reflect the cancer risks in these areas over time.

77.     According to the EPA, these risks are models based largely on self-reported emissions data that present a snapshot in time and likely do not accurately capture fugitive emissions data and fail to show the higher risks over the past decades.

78.     High numbers of cancer cases are reported in areas surrounding the Erie Facility.

## CLASS ACTION ALLEGATIONS

79.     Class Definition: Plaintiffs bring this action pursuant to Rule 1701 *et seq* on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All individuals who have resided, worked or attended daycare and/or school within a five-mile radius of the Erie Facility 2500 Brunswick Avenue, Erie, Pennsylvania beginning the date of initial emissions of EtO from the Erie Facility.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

80.     Numerosity: Rule 1702(1). The exact number of Class members is unknown and not available to Plaintiffs at this time, but on information and belief, over 130,000 individuals fit within the definition of the Class, if not more. It is, therefore, clear that the members of the Class are so numerous that individual joinder is impracticable.

81.     Commonality: Rule 1702(2). There are many questions of law and fact common to the claims of Plaintiffs and the putative Class Member and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

    a.  Whether Defendants' conduct was negligent;

    b.  Whether Defendants owed a duty of care to Plaintiffs and Class Members;

    c.  Whether the duty of care owed to the Class included the duty to prevent their exposure to unsafe, unnecessary, and high levels of EtO emissions;

    d.  Whether a release or releases of a hazardous substance, Et0 occurred for the Erie Facility, the volume of the releases and the transport and fate of the hazardous substances released.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e.  Whether Defendants breached their respective duties to the Class by exposing them to high levels of EtO and, thus, increasing their risk of contracting illnesses;

f.  Whether medical monitoring and early diagnostic detection is reasonably necessary to protect the Class; and

Whether Plaintiffs and Class Members are entitled to relief, including through the establishment of a fund to provide for medical monitoring and diagnostic costs.

82.     Typicality: Rule 1702(3).  Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs and the Class Members sustained damages arising out of defendants' wrongful conduct.

83.     Adequate Representation:   Rule 1702(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs also have no interests antagonistic to those of the Class and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

84.     Superiority: Rule 1702(5).  Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

85.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**COUNT I**
**Negligence**
**(Individually and Collectively against the Erie Facility Defendants)**

86.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

87.     At all times relevant, the Erie Facility Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care in the ownership and operation of its facilities, including the emission of EtO.

88.     Notwithstanding their duties, Defendants breached its duty in one or more of the following ways:

a.  Emitting or allowing the emission of dangerous volumes of EtO into the air from the Erie Facility;

b.  Disregarding safe methods to adequately control EtO emissions from the Erie Facility;

c.  Failing to install, maintain and/or operate adequate control or treatment equipment of EtO emission from the Erie Facility or require same be done or implemented;

d.  Failing to warn or advise those who live, work, or attend school in the community that they were being exposed to EtO;

e.  Failing to reasonably test for and/or adequately record test results of high levels of EtO in Plaintiffs' and the classes' environment;

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

f.   Ignoring or not acting upon test results showing high levels of EtO;

g.   Underreporting EtO levels; and

h.   Subjecting those who live and work near its facilities to elevated cancer risks.

89.   As a proximate result of defendants' use and emission of EtO, Plaintiffs and the Class Member have breathed in air contaminated with elevated levels of EtO—amounts that are far higher and more hazardous than acceptable standards, including those set by the U.S. EPA. The levels they were exposed to were greater thsn the background level of EtO in the environment of Erie, Pennsylvania,

90.   This exposure makes it significantly more likely that Plaintiffs and Class Members will develop further injuries, including several types of cancer and other illnesses, including but not limited to, blood cancers, breast cancers, tumors, and reproductive issues. This makes periodic diagnostic medical examinations, and public health assessments based  on the resulting data, reasonably necessary. Plaintiffs and Class Members have suffered and will suffer economic losses and expenses associated with ongoing medical monitoring.

91.   Monitoring and diagnostic procedures exist that make early detection of these latent cancers possible and beneficial, facilitating in treatment that will significantly reduce the development of, and health effects associated with, the related cancers.

92.   These monitoring and diagnostic procedures are different than those normally recommended in the absence of exposure to toxic gas such as EtO and are reasonably necessary due to Plaintiffs' and Class Members' significant exposure to EtO.

93.   The available monitoring regime is reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis and treatment of the related cancers.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

94.     As a result, Plaintiffs and the Class seek a Court-supervised, Defendants-funded medical monitoring program.

95.     As a further result of the Erie Facility Defendants' tortious acts, activities and omissions, the Named Plaintiffs and other similarly situated, sustained bodily injuries necessitating medical treatment and care, caused them to endure pain, suffering and emotional distress, caused them to sustain a loss of income and earnings capacity, and caused them to incur costs and expenses, all of such injuries are continuing and may and will cause similar injuries and harms into the future.

## COUNT II
### Gross Negligence: Willful and Wanton Misconduct
### (Individually and Collectively against the Erie Facility Defendants)

96.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

97.     At all times relevant, Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in the operation of the Erie Facility , including the emission of EtO.

98.     At all times relevant, the Erie Facility Defendants owed a duty to refrain from intentional, reckless, malicious, fraudulent, willful, and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the property, health, safety, and well-being of Plaintiffs and those living and working in the area surrounding the facilities. The Erie Facility Defendants intentionally, recklessly, maliciously, and fraudulently caused unsafe EtO to emit from its facilities causing damage to Plaintiffs.

99.     The Erie Facility Defendants were motivated by financial profit to intentionally, recklessly, maliciously, fraudulently, willfully, and wantonly expose Plaintiffs to EtO by failing to take proper precautions to prevent the emission of unsafe levels of EtO from these facilities.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM. Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

100.    The conduct of the Erie Facility Defendants as set forth hereinabove showed intentional, reckless, malicious, and fraudulent misconduct.    Accordingly, punitive damages should be imposed against each Defendants to punish and deter each Defendants from repeating or continuing such unlawful conduct.

101.    Notwithstanding their duties, Defendants have been grossly negligent and have breached their duties in one or more of the following ways:

a.    Emitting or allowing the emission of dangerous volumes of EtO into the air from the Erie Facility;

b.    Disregarding safe methods to adequately control EtO emissions from the Erie Facility;

c.    Failing to install, maintain and/or operate adequate control or treatment equipment of EtO emission from the Erie Facility or require same be done or implemented;

d.    Failing to warn or advise those who live, work, or attend school in the community that they were being exposed to EtO;

e.    Failing to reasonably test for and/or adequately record test results of high levels of EtO in Plaintiffs' and the classes' environment;

f.    Ignoring or not acting upon test results showing high levels of EtO;

g.    Underreporting EtO levels; and

h.    Subjecting those who live and work near its facilities to elevated cancer risks.

102.    As a proximate result of defendants' gross negligent use and emission of EtO, Plaintiffs and the Class Member have breathed in air contaminated with elevated levels of EtO— amounts that are far higher and more hazardous than acceptable standards, including those set by the U.S. EPA and Plaintiffs have suffered personal injuries. As a proximate result of Defendants' gross negligence the property in which Plaintiffs own or have a possessory interest have been contaminated and damaged.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

103.    This exposure makes it significantly more likely that Plaintiffs and Class Members will develop further injuries, including several types of cancer and other illnesses, including but not limited to, blood cancers, breast cancers, tumors, and reproductive issues. This makes periodic diagnostic medical examinations reasonably necessary.

104.    Monitoring and diagnostic procedures exist that make early detection of these latent cancers possible and beneficial, facilitating in treatment that will significantly reduce the development of, and health effects associated with, the related cancers.

105.    These monitoring and diagnostic procedures are different than those normally recommended in the absence of exposure to toxic gas such as EtO and are reasonably necessary due to Plaintiffs' and Class Members' significant exposure to EtO.

106.    The available monitoring regime is reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis and treatment of related cancers.

107.    As a result, Plaintiffs and the Class seek a Court-supervised, Defendants-funded medical monitoring program.

108.    As a further result of the Erie Facility Defendants' tortious acts, activities and omissions, the Named Plaintiffs and other similarly situated, sustained bodily injuries necessitating medical treatment and care, caused them to endure pain, suffering and emotional distress, caused them to sustain a loss of income and earnings capacity, and caused them to incur costs and expenses, all of such injuries are continuing and may and will cause similar injuries and harms into the future.

**COUNT III**
**Public Nuisance pursuant to 11 Pa. C.S. § 127A01**
**(Individually and Collectively against the Erie Facility Defendants)**

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

109.   Plaintiffs reallege and reaffirm each and every allegation set forth in all of the preceding paragraphs as if fully stated herein.

110.   The Erie Facility Defendants' negligent and grossly negligent, as alleged above, conduct has caused unreasonable and substantial interference with public health and the comfortable enjoyment of life and property of residents in the neighboring community , such as by causing EtO to be emitted into the atmosphere.

111.   Defendants' conduct was a substantial factor in causing Plaintiffs and other Class Members to having to pay medical costs and has caused the need for a medical monitoring program and health assessment .

112.   By causing the emission of EtO into the atmosphere, Defendants have injuriously affected rights common to the general public, such as the rights of the people to public health, public safety, public peace, public comfort, and public convenience. The public nuisance caused by defendants' conduct has caused substantial annoyance, inconvenience, and injury to the public.

113.   The Defendants knew that their acts and/or omissions regarding the release of EtO would have a detrimental effect on the health of the Class. The injuries of the class, however, are different and greater than those sustained by general public beyond the class boundaries.

114.   Plaintiffs and the class are entitled to have the nuisance abated and to damages for the injuries they allege above.

## COUNT IV
### Private Nuisance
### (Individually and Collectively against the Erie Facility Defendants)

115.   Plaintiffs reallege and reaffirm each and every allegation set forth in all the preceding paragraphs as if fully stated herein.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

116.    Defendants' conduct has caused unreasonable and substantial interference with the Plaintiffs and Class Members' lives and comfortable enjoyment of their respective lives and properties, causing substantial health impacts to Plaintiffs and members the class, costs which have been unreasonably borne by the Plaintiffs and Class Members who suffered, and continue to suffer, losses by having to pay the cost to abate these risks to their health.

117.    Defendants' conduct was a substantial factor in causing Plaintiffs and Class Members to have to pay these costs and damages.

### COUNT V
### (HAZARD SITES CLEANUP ACT)
#### *(Medical Monitoring, Health Assessment, Health Effects Study)*

118.    Plaintiffs reallege and reaffirm each and every allegation set forth in all the preceding paragraphs as if fully stated herein.

119.    The Erie Facility is "site" with the Hazardous Cleanup Act, Act 108 of 1988's ("HSCA"), definition of that term in §103 of HSCA.

120.    The Erie Facility Defendants owned and/or operated, or was the past owner and operator of, the Erie Facility  as such terms are defined in §103 of HSCA.

121.    EtO is a Hazardous Substance under HSCA defines that term  in §103 of the Act.

122.    The Erie Facility Defendants are responsible for the release of the contaminants and hazardous substances from the Erie Facility.

123.    As set forth above, Defendant has caused and continues to cause the release, or the substantial threat of release, of contaminants and hazardous substances such as EtO from the Erie Facility, which release and releases present a substantial danger to the public health and safety of area residents, including Plaintiffs and the Class, as well as to the environment.

124.    The releases and threatened releases of contaminants and hazardous substances from the Facilities by Defendant constitute public nuisances under Section 1101 of the HSCA.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial
System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

125.   The releases and threatened releases of contaminants and hazardous substances by Defendant constitute unlawful conduct under Section 1108 of the HSCA.

126.   Pursuant to Sections 507, 702 and 1101 of the HSCA,  the Erie Facilty Defendants are strictly liable for the costs incurred or to be incurred by the respond to the releases and threatened release of contaminants and hazardous substances, including, but not limited to, medical monitoring, a health assessment and/or health effects study.

**COUNT VI**
**Strict Liability-for Design Defect and Failure to Warn**
**(Individually *and Collectively* against the EtO Supply Defendants)**

127.   Plaintiffs restate, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

128.   The ETO mixtures and ETO-containing products reached the Plaintiffs' and Class Members' lands without any substantial change in condition from when they left the control of the Defendants.

129.   The ETO mixtures and ETO mixtures and ETO- products sold and distributed to the Sterilization Defendants when formulated, compounded  or manufactured were dangerously defective for their intended use. Among other things the defendants failed add or include an odorant or employ some other means to alert users, bystanders and those otherwise coming into contact with the EtO  that the gas was present.

130.   Despite the EtO Supply Defendants' knowledge, they failed to provide adequate warnings and/or instructions that its EtO and EtO-containing products were toxic, carcinogenic, and would injure the Class Members' health and livelihood unless proper precautions were taken.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

131.    The EtO Supply Defendants could have warned of and instructed about these dangers but failed to do so and intentionally concealed information in order to maximize profits for decades.

132.    The EtO Supply Defendants continued to conceal the dangers of ETOs after they manufactured, distributed, marketed, promoted, and sold ETOs and ETO-containing products.

133.    The absence of an odorant or other means of alerting to fugitive gas and adequate warnings made the product inherently dangerous.

134.    The EtO Supply Defendants are strictly liable for all damages to the Class arising out of its failure to properly design and formulate the EtO product and/or provide adequate warnings and instructions regarding its unreasonably dangerous ETOs and ETO-containing products.

The EtO Defendants' unreasonably dangerous EtO products proximately caused the presence of EtO in Plaintiffs and putative Class Members environment and injury to them as alleged above.

## COUNT VI
### Negligent Design and Product Marketing Defect
### (Individually and Collectively against the EtO Supply Defendants)

135.    Plaintiffs restate, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

136.    The EtO Supply Defendants owed a duty of reasonable care to protect Plaintiffs and Class Members against the unreasonable health and safety risks resulting from the use and disposal of EtO and EtO-containing products in sterilization plants such as the Erie Facility.

137.    The EtO Supply Defendants failed to exercise ordinary care because a reasonably careful company—that knew of EtO's toxicity, carcinogenicity, danger to humans, and destruction

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of the lands—would not, as it or they did,  manufacture, distribute, use, and dispose of those products; would warn of its toxic and environmentally hazardous properties; or would take steps to enhance the safety and/or reduce the toxicity and environmental persistence of the products.

138.    The EtO Supply Defendants further failed to exercise ordinary care because reasonably careful companies that knew that EtO could not be contained during normal production, distribution, use, and disposal efforts of its end users not continue to manufacture, distribute, use, and attempt to dispose of EtO in a way that allowed the discharge of EtO into and onto Plaintiffs' and Class Members' lands.

139.    The EtO Supply Defendants failed to exercise ordinary care because reasonably careful companies would not continue to manufacture, distribute, use, and dispose of EtO in mass quantities and to the extent and in the applications that Defendants manufactured and attempted to dispose of them.

140.    Defendants failed to exercise ordinary care because reasonably careful companies would use basic precautionary measures of adding an odor to EtO, or employ other means of alarm, that would alert residents in the vicinity of the toxic EtO emissions present in the air they were breathing.

141.    Defendants' EtO and EtO-containing products in Plaintiffs and Class Members caused and continue to cause injury and damage to the health and well-being of Plaintiffs and Class Members.

142.    Plaintiffs and Class Members have suffered, are suffering, and will continue to suffer into the indeterminable future the injuries  described above as a result of the EtO Supply Defendants' wrongful acts, omissions and activities.

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT XI
### Restitution – Unjust Enrichment
### (Individually and Collectively against all Defendants)

143.    Plaintiffs reallege and reaffirm each and every allegation set forth in all the preceding paragraphs as if fully stated herein.

144.    Defendants have avoided liability for these costs.

145.    In equity and fairness, it is the Defendants, not the Plaintiffs and Class Members, who should bear the costs of healthcare for the Plaintiffs and Class Members. As a result, the Defendants have been unjustly enriched to the extent that the Plaintiffs and Class Members have had to pay these costs.

146.    As a result of the Defendants' acts and omissions specified herein, the Plaintiffs and Class Members were forced to spend far more on actual healthcare costs to identify and remedy their medical needs.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, LeAnne Morton and Tori Gido in their own right and on behalf of the Class, requests that the Court enter judgment in their favor and against Defendants as follows:

a.    An Order certifying the Class as defined herein and appointing Plaintiffs LeAnne Morton and Tori Gido and undersigned Counsel as representatives of the Class;

b.    An award of damages, including nominal and compensatory damages, as allowed by law and in an amount to be determined;

c.    An Order creating a fund for a medical monitoring program in an amount determined to be just and reasonable;

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

d.   An award of punitive damages as allowed by law and in an amount to be determined;

e.   An award of attorneys' fees, costs and litigation expenses;

f.   An award of prejudgment interest on all amounts awarded;

g.   An Order and decree for injunctive and declaratory relief, including an injunction abating the nuisance the Erie Plant inflicts upon the Plaintiffs' and class's community; and

h.   Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues.

Dated: August 2, 2024

Respectfully submitted,

*/s/ Michael Coren*
Michael Coren (PA # 31037)
Eric S. Pasternack (PA # 320127)
Matthew A. Capacete (PA # 330982)
Drew M. Renzi (PA # 327880)
**COHEN, PLACITELLA & ROTH, P.C.**
Two Commerce Square
Suite 2900
2001 Market Street
Philadelphia PA  19103-7054
Tel. (215) 567-3500
mcoren@cprlaw.com
epasternack@cprlaw.com
mcapacete@cprlaw.com
drenzi@cprlaw.com

*Of Counsel:*

Robert Gitelman, Esq.
    *(Pro Hac Vice Forthcoming)*
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road
Suite 305
Melville NY  11747-4810
Tel. (212) 397-1000
rgitelman@napolilaw.com

John R. Fonda, Esq.
    *(Pro Hac Vice Forthcoming)*
**NAPOLI SHKOLNIK PLLC**
1213 Culbreth Drive
Suite 216
Wilmington NC  28405-3639
Tel. (919) 374-1971
jfonda@napolilaw.com

***Attorneys for Plaintiffs and the Putative Class***

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Paul J. Napoli, Esq.
*(Pro Hac Vice Forthcoming)*
**NS PR LAW SERVICES LLC**
1302 Avenida Ponce de León
San Juan PR  00907-3982
Tel. (833) 271-4502
pnapoli@nsprlaw.com

Docusign Envelope ID: 579D6A74-1B7F-4127-9B11-9DDB71388D05

## VERIFICATION

LeAnne Morton hereby states that she is the plainti in this action and veri es that the statements made in the foregoing pleading are true and correct to the best of her knowledge, information, and belief.  The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to the unsworn falsi cation to  authorities.

Date: August 2, 2024

DocuSigned by:

LeAnne Morton

4ZD41E33C78D4C3

LeAnne Morton

Case# 2024-11887-0 Received at Erie County Prothonotary on 08/02/2024 9:27 PM, Fee = 143.75. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.